IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

_____  )
_____  )
_____  )
(Enter above the full name of the Plaintiff(s)  )
                                                 )
vs.                                              )   Case Number  5:24-cv-4095-TC-TJJ
                                                 )
_____  )
Name                                             )
_____  )
Street and number                                )
_____  )
City           State          ZipCode            )

(Enter above the full name and address of the Defendant in this action - list the name and address of any additional defendants on the back side of this sheet).

**CIVIL COMPLAINT**

I.   Parties to this civil action:

   (In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any, on the back side of this sheet).

   A.   Name of plaintiff_____

        Address_____

        _____

        _____

1

(In item B below, write the full name of the defendant in the first blank. In the second blank, write the official position of the defendant. Use item C for the names and positions of any additional defendants).

B.   Defendant_____is

   employed at _____

   _____

C.   Additional Defendants_____

   _____

   _____

II.   Jurisdiction:

(Complete one or more of the following subparagraphs, A., B.1, B.2., or B.3., whichever is applicable.)

A. (If Applicable) Diversity of citizenship and amount:
   1.   Plaintiff is a citizen of the State of _____.
   2.   The first-named defendant above is either
      a.   a citizen of the State of _____; or
      b.   a corporation incorporated under the laws of the State of _____ and having its principal place of business in a State other than the State of which plaintiff is a citizen.

   3. The second-named defendant above is either
      a.   a citizen of the State of _____; or
      b.   a corporation incorporated under the laws of the State of _____ and having its principal place of business in a State other than the State of which plaintiff is a citizen.

(If there are more than two defendants, set forth the foregoing information for each additional defendant on a separate page and attach it to this complaint.)
Plaintiff states that the matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000.00).

2

      B.    (If applicable)  Jurisdiction founded on grounds other than diversity (Check any of the following which apply to this case).

    \_\_\_\_\_ 1.    This case arises under the following section of the Constitution of the United States or statute of the United States (28 U.S.C. §1331): Constitution, Article\_\_\_\_\_, Section\_\_\_\_\_; Statute, US Code, Title\_\_\_\_\_, Section\_\_\_\_\_.

    \_\_\_\_\_ 2.    This case arises because of violation of the civil or equal rights, privileges, or immunities accorded to citizens of, or persons within the jurisdiction of, the United States (28 U.S.C. §1343).

    \_\_\_\_\_ 3.    Other grounds (specify and state any statute which gives rise to such grounds):

    _____

    _____

    _____

    _____

III.    Statement of Claim:

(State here a short and plain statement of the claim showing that plaintiff is entitled to relief.  State what each defendant did that violated the right(s) of the plaintiff, including dates and places of such conduct by the defendant(s).  Do not set forth legal arguments.  If you intend to allege more than one claim, number and set forth each claim in a separate paragraph.  Attach an additional sheet, if necessary, to set forth a short and plain statement of the claim[s].)

_____

_____

_____

_____

_____

IV.    Relief:

(State briefly exactly what judgement or relief you want from the Court.  Do not make legal arguments.)

_____

_____

_____

V.   Do you claim the wrongs alleged in your complaint are continuing to occur at the present time? Yes [  ]   No [  ]

VI.  Do you claim actual damages for the acts alleged in your complaint?
     Yes [  ]    No [  ]

VII. Do you claim punitive monetary damages?   Yes [  ]   No [  ]

If you answered yes, state the amounts claimed and the reasons you claim you are entitled to recover money damages.

_____

_____

_____

_____

_____

VIII. Administrative Procedures:

A. Have the claims which you make in this civil action been presented through any type of Administrative Procedure within any government agency?
Yes [ ]   No [ ]

B. If you answered yes, give the date your claims were presented, how they were presented, and the result of that procedure:

_____

_____

_____

C. If you answered no, give the reasons, if any, why the claims made in this action have not been presented through Administrative Procedures:

_____

_____

_____

IX. Related Litigation:

Please mark the statement that pertains to this case:

_____   This cause, or a substantially equivalent complaint, was previously filed in this court as case number _____ and assigned to the Honorable Judge _____.

_____   Neither this cause, nor a substantially equivalent complaint, previously has been filed in this court, and therefore this case may be opened as an original proceeding.

_____
Signature of Plaintiff

_____
Name (Print or Type)

_____
Address

5

_____
City  State  Zip Code

_____
Telephone Number

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates { [   ]Wichita,   [   ]Kansas City , or   [   ]Topeka} , Kansas as the
(Select One)
location for the trial in this matter.

*[signature]*
Signature of Plaintiff

## **REQUEST FOR TRIAL BY JURY**

Plaintiff requests trial by jury {   [   ]Yes or   [   ]No   }
(Select One)

*[signature]*
Signature of Plaintiff

Dated: _____
(Rev. 10/15)

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **T.U.,** | PLAINTIFF | |
| V. | | CASE NO. |
| **Kansas State Department of Education,** | DEFENDANT | |

### SUPPORTING FACTS FOR ALL COUNTS

i. On September 28, 2022, during a parent-teacher conference, Plaintiff and his wife, shared their concerns for the first time, about the way a teacher's aide called Stephanie Cleland, as well as some peers treated their son D.U. at school. One of the issues that D.U.'s parents was brought up during the conference was D.U.'s anxiety symptoms, such as failure to be responsive and failure to follow directions correctly and promptly.

ii. Another issue that was brought up during the conference was D.U.'s frequent bathroom breaks (see Exhibit A). D.U.'s parents told Kristin Kellerman, one of D.U.'s homeroom teachers, that D.U.'s frequent restroom breaks were due to a medical condition that he had at the time (that he no longer has).

iii. On the following days, D.U. was treated even worse and singled out by Stephanie Cleland, Kristin Kellerman's aide, which included harsh treatment and humiliation for minor or non-existent infractions, as well as closer scrutiny of D.U.'s restroom breaks.

iv. D.U. had a very bad day at school on October 6, 2022. The next day, on October 7, 2022, he had a breakdown before going to school. Shortly afterwards, Plaintiff sent an email to Kristin Kellerman and to his principal, Meaghan Graber, accusing Stephanie Cleland of emotional abuse.

   v.      Plaintiff met with Meaghan Graber on October 10, 2022. In the meeting, Meaghan Graber did not acknowledge that Stephanie Cleland engaged in any misconduct, and yet she still promised the latter would back away from D.U.

   vi.     Plaintiff's advocacy for his son and the unofficial complaint he made against Stephanie Cleland, and Meaghan Graber's irresolute response to it, elicited a vicious retaliation by Kristin Kellerman and Stephanie Cleland, the two of whom were not only associates, but also good friends.

   vii.    The aforementioned retaliation was not only against Plaintiff, but also against his entire family, including D.U., his brother A.U., who was attending the same school, i.e., Wolf Springs Elementary (from hereinafter "WSE"), and his mother Xiaolei Xu, who was at the time a teacher's aide at the same school.

   viii.   The retaliation included spreading false rumors about the entire family, which destroyed the family members' social standing among students, teachers, and parents. As a result, many students, teachers, and administrators turned against the family by late November, 2022.

   ix.    Consequently, Plaintiff filed an official complaint with Meaghan Graber against Stephanie Cleland in December, 2022. As a result of this complaint, Stephanie Cleland did not return to her position after the winter break, in January 2023.

   x.     Yet, D.U.'s social standing at school continued to deteriorate and hit rock bottom in early January. Specifically, he became an absolute pariah and a scapegoat in January 2023.

   xi.    Their teachers began to make both D.U. and A.U. out to be threats, beginning from January 2023, based on the false reports made by their peers and/or on ambiguous evidence. E.g., on January 12, 2023, D.U.'s silly artwork (see Exhibit B) was confiscated for being intimidating.

xii. In the early morning of January 18, 2023, Plaintiff, via email, questioned Lily Bordoni for assigning A.U. unusually low grades.

xiii. On January 18, 2023, a guitar string winder (see Exhibit C) that A.U. randomly found on the floor was confiscated by his teacher, Lily Bordoni, as a peer falsely reported to the teacher that A.U. was playing with it like a gun. On January 19, 2023, A.U. was interrogated for an hour by Meaghan Graber because a peer falsely reported to Lily Bordoni's co-teacher that he said to her "I'll bring my gun and kill you!".

xiv. Overall, certain teachers used certain peers as proxies, along with ambiguous evidence, to frame cases against A.U. and D.U.

xv. Concerned about the impact of social isolation, rejection, and constant humiliation on D.U., his parents requested Meaghan Graber for a meeting with the school psychologist in early February, 2023.

xvi. When their request was denied by Meaghan Graber, D.U.'s parents asked the school social worker for help. D.U.'s mother met with the school social worker on February 3, 2023, and both of D.U.'s parents met with her on February 6, 2023.

xvii. On February 9, 2023, Meaghan Graber reported to A.U.'s parents that he typed the word "bomb" on Wikipedia while at school, which she construed as a serious threat.

xviii. D.U. was accused of having a murder list based solely on a peer's report on February 10, 2023. Consequently, D.U. was secluded and indefinitely banned from WSE on the same day. Neither D.U. nor A.U. would ever be able to go back to WSE again.

xix. D.U.'s parents subsequently found out that Kristin Kellerman had told Kathleen Baker, a relative of hers, during a family function that A.U. was making bombs and D.U. was going to shoot up the school. Kathleen Baker reported this information to the police, and it was the ensuing police investigation that resulted in D.U.'s seclusion and his subsequent ban from school on February 10, 2023.

xx. Plaintiff retained a so-called student rights lawyer to defend D.U. against the disciplinary action BVSD is taking against him. BVSD's board attorney, Melissa Hillman, who had a good rapport with the lawyer, badmouthed the family to him, who consequently turned against the family (see Exhibit D). The lawyer only pushed D.U.'s parents to accept the outcome pre-determined by BVSD, and when BVSD announced this outcome, he withdrew, saying that there was nothing that could be done to challenge the outcome.

xxi. Blue Valley Unified School District 229 (from herein after "BVSD") held a so-called re-entry meeting on February 17, 2023. The only findings that were presented to D.U.'s parents during the meeting were his silly artwork (see Exhibit E). The parents were told that there was no murder list, but that a peer reported that D.U. said he had a murder list.

xxii. During the meeting, BVSD bigwigs tried to talk the parents into requesting a transfer to a school of their choice. They referred to this transfer as a "fresh start", which constituted a carrot for their offer, which the parents refused.

xxiii. After the meeting, BVSD offered another deal to the parents. This time, however, the deal also included a stick besides the carrot: the consequences of not accepting the deal would be a suspension and imposition of strict rules on D.U., such as assigning a monitor to him, not allowing him to bring a backpack, frequent inspections, etc.

xxiv. On the same day, Plaintiff reported the teachers who framed cases against D.U. and A.U. to BVSD bigwigs. He also posted the aforementioned unscrupulous deals offered by BVSD on a private Facebook groups made up of by WSE parents.

xxv. On February 19, 2023, T. U. made a counteroffer to BVSD: The Parents would request a school transfer for both of their children as long as their names were cleared from the accusations. BVSD dismissed this offer, saying that they would make the announcements they deemed appropriate. BVSD also stated that they had "revoked" the children's transfer to WSE and were sending them back to their so-called "home school",

|      |     |
|------|-----|
|      | Cedar Hills Elementary (hereinafter "CHE"). In reality, the two children had never attended CHE a single day in their lives. |
| xxvi. | D.U.'s parents subsequently heard that Meaghan Graber made an announcement to the WSE staff, stating that both A.U. and D.U. made death threats, and that their parents consequently requested their transfers to another school. |
| xxvii. | Before A.U. and D.U. started attending CHE, Amy Farthing, a district executive, suggested in an email that the parents consider alternative schooling options, namely virtual learning and homeschooling (see Exhibit F). |
| xxviii. | Rumors about A.U. and D.U. spread like wildfire at CHE. As a result, both A.U. and D.U., and especially the latter, were treated by peers and teachers with prejudice. As a result, D.U. had serious school avoidance issues and stopped going to school in April, 2023. |
| xxix. | Consequently, D.U.'s parents asked the principal of CHE, Cade Chace, to dispel the rumors about D.U. and to make the school safe for him. In response, Cade Chace threatened to report truancy if D.U. did not attend CHE, or if he did not enroll in virtual learning or a school other than CHE. |
| xxx. | From April 2023 onwards, Plaintiff reported BVSD's wrongdoings and D.U.'s consequent truancy to BVSD and KSDE board members, and received no response. Over the summer, Plaintiff received a notice from his email provider, showing that Michelle Dombrosky, a KSDE board member, blocked his emails. |
| xxxi. | The emails Plaintiff sent to Blue Valley personnel were similarly blocked between April and August, 2023, without informing neither him nor the Blue Valley personnel he was trying to communicate with, including a district executive and several personnel in three different schools. The emails concerned important issues such as a request to view D.U.'s educational records, requests for special education evaluations, complaints filed |

|     |     |
| --- | --- |
|     | with the school board, and D.U.'s enrollment in Liberty View Elementary (from hereinafter "LVE"), another BVSD school. |
| xxxii. | On August 15, 2023, Plaintiff went to LVE for the third time to meet with the principal, school counselor, and D.U.'s home teacher, before school started. The aforementioned LVE personnel clearly had a different attitude towards Plaintiff this time: Plaintiff received a lot of pushbacks from them, who acted as if D.U. was a bad kid and his parents were bad parents. |
| xxxiii. | In September 2023, Plaintiff retained a special education lawyer. Melissa Hillman badmouthed the family to the lawyer, which resulted in the termination of his representation of the family in October, 2023. |
| xxxiv. | On October 25, 2023, D.U. was diagnosed with anxiety disorder by the Johnson County Mental Health Center. In early December, 2023, the parents requested D.U.'s case manager from the Johson County Mental Health Center to observe D.U. at school. Suzanne Martin, the principal of LVE, stonewalled these requests. D.U.'s case manager was never given permission to observe D.U. at school. |
| xxxv. | After that, D.U.'s case manager and her supervisor began to turn against the family. In late December 2023, D.U. began to go to the basement to hide from his case manager when she came to his house. As a result, a new case manager and a supervisor had to be assigned to D.U. in January, 2024. |
| xxxvi. | On December 13, 2023, Plaintiff sent an email to LVE teachers about D.U.'s truancy and the accommodations that D.U. needed. Later, on the same day, BVSD officially imposed a ban on Plaintiff's access to Liberty View personnel and property. |
| xxxvii. | On October 5, 2023, Dennis Stanchik was assigned as the Guardian Ad Litem of D.U. by the truancy court. |
| xxxviii. | Dennis Stanchik talked to D.U.'s parents only once, on November 3, 2023. Their |

|      |      |
|------|------|
| | conversation was via Zoom and lasted half an hour. |
| xxxix. | Dennis Stanchik never talked to D.U. He saw D.U. only once, through Zoom, when D.U. appeared during his first truancy hearing on November 9, 2023. |
| xl. | To the best of the parents' knowledge, Dennis Stanchik never interviewed D.U.'s therapist. It is not even clear if he ever interviewed his case manager from the Johnson County Mental Health Center, or anyone else who knows D.U. To the best of the parents' knowledge, Dennis Stanchik never went to school to meet with or observe D.U. |
| xli. | Yet, Dennis Stanchik attributed D.U.'s truancy to the so-called mental health issues going on in the family. As a result, he demanded mental evaluations of D.U. and his parents during a truancy hearing in early January, 2024. |
| xlii. | Dennis Stanchik also requested the parents to sign release of information forms with the evaluators so that he could "prime" them (by letting them know what is "wrong" with the parents) before they conduct the evaluations. He made it clear that he wanted to reach out to the evaluators prior to the evaluation, rather than after the evaluation. |
| xliii. | When the parents challenged Dennis Stanchik's rationale during the truancy hearing, the judge threatened to take D.U. away from the parents if they did not proceed with the mental evaluations. The judge explicitly ordered the parents during at least one hearing to do the mental valuations for D.U. and for themselves, as well as to sign the release of information papers for Dennis Stanchik so that he could access the evaluators. |
| xliv. | When Plaintiff subsequently went to the District Courthouse and made an inquiry with one of the clerks, however, he was told that there was no such court order. Moreover, the parents received the previous court orders by mail before December 2023, but they received no court orders in writing afterwards. All the court orders from January, 2024 onwards were stated by the judge orally during the hearings, all of which took place via Zoom. |

xlv. Neither the judge nor Dennis Stanchik elaborated on their allegations against the parents, i.e., why D.U. and his parents needed mental evaluations, despite the multiple inquiries the parents made during hearings and in writing.

xlvi. The truancy court also triggered an educational neglect investigation on the parents by reporting them to the Department for Children and Families (from hereinafter "DCF"). DCF subsequently ruled that the educational neglect allegation against the parents was not substantiated.

xlvii. On January 30, 2024, D.U. did not go to school to serve his one day out of school suspension unfairly and improperly given by the principal, even though the parents were given a court order that prohibited D.U. from out of school suspensions. On December 20, 2023, however, the same principal explicitly said that she had changed D.U.'s out of school suspension (similarly unfair and improper) to in-school suspension due to the same court order.

xlviii. In early January 2024, Plaintiff filed a special education complaint with KSDE. His emails initially did not go through. As a result, he used another email account to file his complaint.

xlix. The investigator assigned to the case, Diana Durkin, talked to Plaintiff on the phone for around 25 minutes, and that was the only significant information exchange between the two.

l. Yet, Diana Durkin had had a phone conversation with the Special Education Director of BVSD, Mark Schmidt, beforehand, and then she had a Zoom meeting with both Mark Schmidt and Melissa Hillman after her conversation with Plaintiff.

li. In their phone conversation, Diana Durkin did not ask Plaintiff for more evidence. She also did not do a field investigation to gather evidence, although Plaintiff had requested that in his complaint. Almost all the phone conversation focused on functional behavior

analysis (from hereinafter "FBA").

lii. After spending so much time on discussing FBA, Diana Durkin concluded the phone conversation by saying something like "the school did not proceed with FBA since you did not give consent, and that is why there is no violation of IDEA (Individuals with Disabilities Education Act)." If there was nothing to talk about FBA, then why did she talk about FBA the entire time?

liii. In addition, Diana Durkin said that FBA is used to resolve issues such as school avoidance. Plaintiff found the suggestion preposterous and told her that FBA is typically meant for behavioral challenges such as outbursts, whereas avoidance or phobia-related restraints in school avoidance cases are the complete opposite.

liv. Diana Durkin's legal research was equally dubious. The case law she referred to in her report, *L. F. v. Lake Washington Sch. Dist. #414*, 947 F.3d 621, was mainly a civil rights case, claiming restriction of free speech and retaliation pursuant to the First Amendment and Section 504, respectively. The case in no way concerned parental participation pursuant to IDEA.

lv. Diana Durkin told Plaintiff on the phone that her job was to assess his complaint based on the criteria set by special education laws, not by any other laws. In her legal analysis, however, she applied the First Amendment and Blue Valley's Handbook to assess the violation of parental participation claim made by Plaintiff under IDEA (see Exhibit G).

lvi. On February 21, 2024, Plaintiff succumbed to the pressure the family had been receiving from Dennis Stanchik as well as from the truancy court, disenrolled D.U. from LVE, and registered for D.U. homeschooling. As a result, the truancy case against D.U. was dismissed.

lvii. In March 2024, Plaintiff had a consultation with an educational lawyer, who knew Melissa Hillman. Plaintiff signed and returned the client engagement letter and shared

|   |   |
|---|---|
|        | several documents with the lawyer by using his law firm's portal. After that, the lawyer disengaged and has never communicated with Plaintiff since then. |
| lviii. | In early May 2024, Plaintiff filed a due process complaint with KSDE, which initially did not go through. As a result, Plaintiff had to use an alternate email account to file his complaint. |
| lix.   | In June 2024, Plaintiff filed a notice of claim with KSDE, accusing the latter of whitewashing BVSD's wrongdoings, including, but not limited to the murder list hoax at WSE. KSDE responded in early July 2024, stating that the murder list incident is outside KSDE's jurisdiction. |
| lx.    | On July 15, 2024, Plaintiff and his wife attended a status conference held by the due process Hearing Officer, who stated that the murder list incident was outside her jurisdiction, and who overruled Plaintiff's related discovery requests. |
| lxi.   | As part of the due process hearing, Plaintiff served a subpoena to Tish Taylor to produce the data collection sheets that she used in her psychoeducational evaluations of A.U. and D.U. Tish Taylor's attorney objected to this subpoena on August 22, 2024. |
| lxii.  | On August 30, 2024, Tish Taylor's attorney filed a motion to quash Plaintiff's aforementioned subpoena. Her motion unequivocally manifested input from Melissa Hillman. |
| lxiii. | On September 4, 2024, the due process Hearing Officer held another status conference, in which she severely restricted the parents' discovery request regarding BVSD's internal emails about their children. Specifically, the Hearing Officer ordered the parents to provide fewer and fewer and more specific search terms, shorten the timeframe, and further narrow down the BVSD employees whose emails would be subject to search. |
| lxiv.  | On the same status conference, BVSD's legal team presented Plaintiff with a fait accompli, stating that they would outsource the already severely restricted email search |

|      |     |
|------|-----|
| | to a vendor and file a motion to shift the search cost to the parents. The proposal shocked the Plaintiff, but the Hearing Officer seemed to have been pre-informed about it. |
| lxv. | Plaintiff objected to the proposal, stating that the parents were entitled to all the internal emails if they were going to pay for the search. Plaintiff also expressed his willingness to be involved in the vendor selection process, but the Hearing Officer dismissed Plaintiff by virtually vouching in advance for the vendor that BVSD would potentially choose. |
| lxvi. | On September 20, 2024, the due process Hearing Officer ruled in favor of Tish Taylor's motion to quash. Thus, the parents were barred from accessing the data that formed the basis of the evaluation reports the parents paid Tish Taylor to write about their children. |
| lxvii. | Another irregularity about Tish Taylor's evaluations included her consulting with Melissa Hillman to write her report on D.U. BVSD did not allow Tish Taylor to talk to D.U.'s teachers at WSE, and instead directed her to Melissa Hillman, who is a board attorney, and who does not know D.U. one bit. However, Tish Taylor incorporated the information she received from Melissa Hillman into D.U.'s evaluation. |
| lxviii. | On September 1, 2024, the parents filed another due process complaint after Mark Schmidt unequivocally declined their requests to hold an IEP meeting. BVSD requested Crista Grimwood, KSDE's Grievance Coordinator, to consolidate parent's new complaint with the ongoing due process hearing. Crista Grimwood asked BVSD to direct the request to the Hearing Officer. |
| lxix. | On September 5, 2024, BVSD filed a motion to consolidate the complaints. The parents stated that pursuant to K.S.A. § 72-3415(f), they are entitled to file separate due process complaints for separate issues, and that the Hearing Officer presiding in the initial hearing has the authority to bifurcate and streamline the complaints, but not to consolidate them. |
| lxx. | On September 10, 2024, the Hearing Officer ruled in favor of the consolidation. |

lxxi.   In short, the parents filed a due process complaint with the assumption that they had the right to a fair hearing. Yet, it turned out that: they are barred from filing separate due process complaints; they are barred from bringing up the murder list hoax at WSE, which turned the entire family's life upside down; they are barred from accessing the data that formed the basis of their children's private evaluations, which they paid for; they are barred from learning what their children's teachers said to each other about their children by email.

- **Exhibit List**
    - Exhibit A: Parent-Teacher conference notes
    - Exhibit B: Confiscated evidence
    - Exhibit C: Student rights lawyer
    - Exhibit D: Artwork compilation
    - Exhibit E: Kids are happiest at home
    - Exhibit F: Durkin's report
    - Exhibit G: Superintendent's empty threats

Name: Tolga Ulusemre
Address: 13982 W 147th St
City, State Zip: Olathe, KS 66062
Telephone: 912-481-8074
Email: tulusemre@gmail.com